FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 MAY 16

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAY 16 2000

WILLIE HALE, JR.,            )
                             )
    Plaintiff,               )
                             )
v.                           )   Civil Action No.
                             )
                             )   99-AR-3206-S
MEREDITH ENVIRONMENTAL, INC.,)
a corporation, et al.,       )
                             )
    Defendants.              )

*********************************

LENORRIS FREEMAN,            )
                             )
    Plaintiff,               )
                             )
                             )   Civil Action No.
v.                           )
                             )   99-AR-3207-S
MEREDITH ENVIRONMENTAL, INC.,)
a corporation, et al.,       )
                             )
    Defendants.              )

### MEMORANDUM OPINION

Before the court in the above two consolidated cases are plaintiffs' motion for summary judgment and defendants' cross-motion for summary judgment. Plaintiffs, Willie Hale, Jr. ("Hale") and Lenorris Freeman ("Freeman"), allege that defendants, Meredith Environmental, Inc. ("Meredith") and John E. Meredith, Jr. ("Mr. Meredith"), violated the Fair Labor Standards Act ("FLSA") by not paying plaintiffs time-and-a-half of their regular rate for all



overtime hours worked.

Defendants have conceded from the very beginning of the case that plaintiffs are owed the claimed back wages for overtime worked. However, defendants say that they should not be liable for liquidated damages and for attorney's fees unless in a nominal amount. For the reasons set forth in the opinion below, the court will grant plaintiffs' motion as to the overtime wages. However, the court will deny plaintiffs' motion and will grant defendants' motion with respect to the claim for liquidated damages. The court will also deny both plaintiffs' and defendants' motions for summary judgment with respect to the claim for attorney's fees as a premature issue.

## Pertinent Facts

Hale and Freeman worked for Meredith, of which Mr. Meredith was president.[1] They both were paid $12 an hour to begin with. At some point, they began making $13 per hour. However, they were not paid at time and one half of those rates for all overtime hours they worked. Meredith does not deny that plaintiffs are entitled

---

[1] Hale claims that he started work in December of 1998 or January of 1999. Freeman claims that he started work in November or December of 1998. Defendant says that Hale began work in June of 1998 and that Freeman began work in August of 1998. This dispute is immaterial for purposes of summary judgment because there is no dispute about the amount of overtimes wages owed either plaintiff.

2

to the back wages they claim under the FLSA.

After Freeman was let go by Meredith in June of 1999, he contacted the National Labor Relations Board ("NLRB") and told it that he believed he had not been paid properly for his overtime. After several months passed and Freeman had not heard anything from the NLRB, he contacted an attorney.

Hale quit Meredith in July of 1999. At some point afterwards, he, too, contacted the NLRB and told it that he believed he had not been paid properly for his overtime. The NLRB told him that he did not have to open his own claim because it had already initiated an investigation in response to Freeman's complaint. After several months passed and Hale had not heard anything from the NLRB, he, too, contacted an attorney.

On November 16, 1999, Wendy Allison Reese, acting as plaintiffs' attorney, sent Mr. Meredith two letters telling him that if he paid the overtime back wages he owed plaintiffs by November 26, 1999, he could avoid a lawsuit. The letters said: "If I am forced to file suit in Federal Court, your company will be liable to [plaintiffs] for double the amount of overtime currently due [them] plus my attorney's fees and costs of litigation." Ms. Reese says that Mr. Meredith called her after he had received the letters and told her that he was represented by James Nolan, and

3

that he would be forwarding her correspondence to Mr. Nolan. Ms. Reese says that she then tried to contact Mr. Nolan but was unsuccessful. Plaintiffs filed suit on December 2, 1999.

The rest of the story is either disputed or unclear. Any way it is looked at it looks and sounds like a Keystone Kops movie. Plaintiffs say that they were forced to file the lawsuit to get their money. Mr. Meredith says that he prepared their "settlement" checks for plaintiffs on December 2, 1999, not knowing that they were in the process of filing suit. Mr. Nolan says that he attempted to deliver the checks to Ms. Reese but that they were refused. Plaintiffs say that neither they nor their attorneys were told prior to filing their complaints that defendants intended to pay them the claimed overtime wages due. They say that Meredith's initial settlement offer was made only after the complaints were filed.

However, Ms. Reese admits that someone from Mr. Nolan's office contacted her office on December 3, 1999, and stated that Freeman's check in the amount of $4,943.52 was ready to be picked up, along with Hale's check for $2,910.32. Plaintiffs say that they were not told that these amounts included the tax withholdings, so that they erroneously assumed that they were being offered less than they were due. They offer this as an explanation for rejecting the

4

checks. Plaintiffs claim that they were not informed until two weeks after the defendants attempted to deliver the checks that the checks included the tax withholdings. The incontrovertible fact is that on December 3, 1999, plaintiffs could have gotten every dime they were due, except court costs, liquidated damages, and attorney's fees, none of which would have been matters in issue if the checks had been received before the complaints were filed.

### Summary Judgment Standard

Rule 56(c), Fed. R. Civ. P., provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a _genuine_ issue of _material_ fact, not merely some factual dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986).

Because there is no disputed issue of material fact with respect to the wages actually owed pursuant to the FLSA, the court must grant judgment for plaintiffs for those overtime wages. However, because the parties filed cross-motions for summary

5

judgment with respect to the claims for liquidated damages and attorney's fees, the court must determine where the undisputed facts relevant to those issues lead, if they lead anywhere.

### Overtime Wages

Defendants do not contest plaintiffs' motion for summary judgment as to the amount of overtime wages claimed. Why defendants did not make formal offers of judgment pursuant to Fed. R. Civ. P. 68, is somewhat of a mystery. Perhaps defendants thought that they had performed the functional equivalent of the Rule 68 requirements. In any event, the court must grant plaintiffs' motion for judgment as to the wages that defendants have been unsuccessful in pressing into plaintiffs' hands.

### Liquidated Damages

29 U.S.C. § 260 states:

> In any action . . . to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, . . . if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

These words indicate, and case law confirms, that the determination of whether liquidated damages should be awarded is a matter for the

court in "its sound discretion." It is not a matter for the jury.

The Eleventh Circuit has pointed out that "good faith" under § 260 has both an objective and a subjective component. In order to satisfy the subjective component of "good faith," the employer has the burden of proving to the court that it had an honest intention to ascertain what the Act requires and to act in accordance with it. See Dybach v. Florida Dept. of Corrections, 942 F.2d 1562, 1566 (11th Cir. 1991) (citations omitted). The Eleventh Circuit has also noted that "[a]n employer, who knew or had reason to know that the FLSA applied, could not establish good faith as a defense," and that "before a district court may exercise its discretion to award less than the full amount of liquidated damages, it must explicitly find that the employer acted in good faith." Joiner v. City of Macon, 814 F.2d 1537, 1539 (11th Cir. 1987). In so holding, Joiner cited two Fifth Circuit cases from 1979 and 1980. In one of those cases, the "Old" Fifth stated:

> We understand the language [of the Act] to impose upon the employer who would escape the payment of liquidated damages a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.

Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464, 468 (5th Cir. 1979).

The court went on to say:

> [W]e also doubt the validity of ignorance as a defense to liability for liquidated damages . . . We do not believe an employer may rely on ignorance alone as reasonable grounds for believing that its actions were not in violation of the act. . . . Further, we feel that good faith requires some duty to investigate potential liability under the FLSA. Even inexperienced businessmen cannot claim good faith when they blindly operate a business without making any investigation as to their responsibilities under the labor laws.

<u>Barcellona</u> at 468-469 (internal citations omitted). <u>See also</u> <u>Washington v. Miller</u>, 721 F.2d 797, 804 (11th Cir. 1983)(quoting <u>Barcellona</u> and holding same).

The instant case presents an interesting and unique situation. Mr. Meredith is not claiming total ignorance of the FLSA. He knew that the FLSA applied to these workers, and he was familiar with the concept of "time-and-a-half." However, the rest of his story is, essentially, a claim of ignorance. He states that he erroneously thought because he had paid plaintiffs time-and-a-half of the **market** rate for the **regular** hours worked, that time-and-a-half of the **market** rate was appropriate for overtime pay as well.

He testified:

> I fully believed in good faith that I was in full compliance with the law because the employees were being paid what was equivalent to overtime in the industry, and not just for overtime hours but for all hours. My belief was in reliance on the wage and hour rule that employees

>  are entitled to time and one half for hours over forty in
>  a workweek.  Frankly, what I did not understand was that
>  the law would require payment of time and one half on the
>  "overtime" rate Meredith Environmental had agreed to pay
>  employees for all hours worked.

Meredith Aff. at 2.

There is not the slightest evidence to suggest that defendants acted maliciously or in reckless disregard of the requirements of the FLSA.  The only evidence is that they acted in abysmal ignorance.  The actual requirement of the FLSA is simple and unambiguous: employers must compensate an employee who works in excess of forty hours per week "at a rate not less than one and one-half times the **regular rate at which he is employed**."  29 U.S.C. § 207(a)(1) (emphasis added).  This court could, in its discretion, assess liquidated damages against an employer who misunderstood this provision of the FLSA and therefore did not comply with it.  But this court cannot bring itself to assess liquidated damages against this particular employer who, when he realized that he was mistaken in his understanding of the FLSA, offered full restitution to his employees before he knew that suit had been filed.  Whatever animosity that exists between Ms. Reese and Mr. Nolan should have no bearing on whether Mr. Meredith himself acted in good faith; he reasonably relied on Mr. Nolan.

The court believes that it would be an unsound and unfair

9

exercise of whatever discretion it has to allow the simple filing of an action that by the act of filing created the possibility of the imposition of liquidated damages to bootstrap that possibility into an assurance of punishment of the defendant. Simply refusing to accept an offer of **full** compensation should not constitute a guarantee of **double** compensation. A plaintiff's misunderstanding should cancel or offset a defendant's misunderstanding under such circumstances.

### Attorney's Fees

The attorney's fee question will be addressed only if and when plaintiffs file a timely claim for them with the required supporting documentation.

### Conclusion

A separate and appropriate judgment will be entered.

DONE this 16th day of May, 2000.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE